UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                              :

UNITED STATES OF AMERICA,         :        07 Cr. 183 (GEL)
                              :

          -v-                 :      **OPINION AND ORDER**
                              :

HARRY WILLNER,              :
                              :

                      <u>Defendant</u>.   :

------------------------------------------------------------x

Pablo Quinones and Stanley J. Okula, Jr. Assistant
United States Attorneys, Southern District of New
York (Michael J. Garcia, United States Attorney)
New York, New York, <u>for the United States of
America</u>.

Maurice H. Sercarz and Julia L. Gatto, New York,
New York, <u>for defendant</u>.


GERARD E. LYNCH, <u>District Judge</u>:

      A grand jury indicted defendant Harry Willner on five counts of endeavoring to obstruct

the administration of the Internal Revenue Service (Count One) and filing false corporate tax

returns (Counts Two through Five).  Willner moves to dismiss all counts of the indictment on the

ground that they fail to charge offenses, and to dismiss Count One on the ground that it is

duplicitous.  He also moves to strike alleged surplusage from the indictment.  All the motions

will be denied.

## BACKGROUND

      Willner, while employed as an IRS agent, engaged in various outside activities.  With the

permission of his superiors, he taught business courses at graduate schools in Manhattan and had

some affiliation with a magazine publisher, Royal Magazine, Inc. ("Royal").  In addition, he

apparently operated a purported advertising business called NIA Advertising, Inc., ("NIA").

It is unclear from the indictment what if any business NIA ever did or what income it produced. Its tax returns reflect, however, that in the year 2002 it suffered a substantial net operating loss ("NOL") as a result of a reported unrepaid loan to Royal. Under the tax code, such an NOL, as a general rule, may be carried backward 2 years or forward 20 years to offset income earned by the taxpayer in other years. See 26 U.S.C. § 172(b)(1)(A).

The indictment charges that Willner devised a fraudulent scheme to utilize the NOL to shelter income earned not by NIA but by others, including himself. For example, as charged substantively in Counts Two through Five, Willner is charged with "assigning" his income earned by teaching during the years 2002 to 2005 to NIA, instructing his academic employers to make checks for his salary payable to NIA rather than to him. The income was thus reported on NIA's return rather than on his personal income tax return. Since NIA made no other income in the relevant tax years, its large NOL carry-forward meant that NIA paid no tax on this purported "income," while of course the income went unreported on Willner's own returns, where it would have resulted in increased tax liability.

According to the indictment, Willner sought to enlist others in this scheme, asking his accountant to identify other taxpayers who could similarly channel income through NIA. Willner's proposal, outlined in detail in a tape-recorded conversation with the accountant, was that he would accept payments due to the putative tax evader through NIA, report them to the IRS as income of NIA (where they would incur no liability because of NIA's continuing NOL), and then return 80% of the payments to the party that had earned them, retaining 20% as a fee for his services.

2

The indictment charges in Count One that Willner's alleged scheme for misusing the NOL constituted an endeavor to corruptly obstruct and impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a), and in Counts Two through Five that his reporting of his own income as NIA's income on NIA's tax returns constituted the filing of false and fraudulent corporate tax returns for the relevant tax years, in violation of 26 U.S.C. § 7206(2).

## DISCUSSION

Willner moves to dismiss Count One for failure to state a crime and for duplicity, to dismiss Counts Two through Five for failure to state a crime, and to strike alleged surplusage from the indictment.

I. Count One

A. Failure to Charge a Crime

Willner argues that Count One fails to charge a crime, citing United States v. Kassouf, 144 F.3d 952 (6th Cir. 1998), for the proposition that the crime of endeavoring to obstruct the administration of the internal revenue laws requires more than mere efforts to evade taxes, but the additional element of interference with an on-going proceeding or investigation of the Internal Revenue Service.

The Government first argues that the Court should not consider Willner's argument, contending that it is nothing more than a premature effort to test the sufficiency of the Government's evidence before trial, and that the facial sufficiency of an indictment that recites the statutory elements defeats Willner's claim.  (G. Br. 7-9.)  Willner counters that this case comes within the exception to that principle cited in United States v. Alfonso, 143 F.3d 772,

776-77 (2d Cir. 1998), which suggested that the sufficiency of the evidence can be tested where "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial." (D. Br. 7.)

Willner's motion, however, does not present a question of the sufficiency of the Government's evidence, but rather of the validity of its legal theory. Willner does not argue (at this time) that the Government lacks the evidence to establish the facts alleged in the indictment; rather, he argues that those facts, assuming they can be proven, do not violated the statute. The indictment, and the Government's response to Willner's motion, are quite clear as to what the Government contends Willner did to violate § 7212(a), and Willner contends that, even assuming he did exactly what the Government charges, he did not commit the crime defined by that statute. This is, as Willner argues (D. Reply 2), a pure question of law, amenable to resolution on a motion to dismiss.

Turning, then, to the merits, Willner argues that the indictment charges him simply with scheming to make, and then with making, false statements to the IRS in connection with his own and others' tax returns. This, he contends, is insufficient to violate § 7212(a), since that statute requires that the taxpayer be aware of, and intend to obstruct, an existing IRS proceeding or inquiry. To support this legal proposition, he relies on the Sixth Circuit's decision in Kassouf, and on a review of cases discussing the scope of § 7212(a), which he contends shows that the prosecutions that have been upheld by the courts of appeals all fall into various categories in which his proposed nexus requirement was satisfied.

The latter form of "authority" is easily dismissed. Even if Willner's historical survey were complete, it would not establish anything about the correct interpretation of § 7212(a). As

the Second Circuit has pointed out, "even the complete absence of a reported decision involving

similar factual circumstances does not determine per se the proper scope of a particular law."

United States v. Kelly, 147 F.3d 172, 175 (2d Cir. 1978).

Moreover, Willner's survey is far from complete.  As the Sixth Circuit acknowledged in

Kassouf, the case reports are in fact replete with cases in which appellate courts, including the

Second Circuit, have affirmed convictions for violations of § 7212(a), or otherwise failed to raise

objections to § 7212(a) indictments, in which no IRS proceeding or investigation was pending.

144 F.3d at 956.  See also, e.g., United States v. Josephburg, 459 F.3d 350 (2d Cir. 2006)

(reversing as premature a pretrial dismissal for multiplicity of § 7212(a) charge that district court

found identical to a tax evasion charge under § 7201); United States v. Yakobowicz, 427 F.3d

144 (2d Cir. 2005) (affirming § 7212(a) conviction for providing false information and doctored

documents to accountants for preparation of tax return); United States v. McLeod, 251 F.3d 78

(2d Cir. 2001) (affirming sentence where defendant pled guilty to § 7212(a) charge based of

falsifying tax documents); United States v. Hanson, 2 F.3d 942, 946-47 (9th Cir. 1993)

(affirming conviction under § 7212(a)'s omnibus clause where defendant submitted false 1099

and 1096 forms to the IRS showing fictitious payments to Farmers Home Administration

officials and filed a false personal tax return claiming a fraudulent tax refund); United States v.

Mitchell, 985 F.2d 1275, 1276-79 (4th Cir. 1993) (finding defendant properly charged under §

7212(a) where conduct alleged involved improper filing of tax exempt status and inducement of

customers to file false returns claiming cost of his services as tax-deductible contributions);

United States v. Kuball, 976 F.2d 529, 531 (9th Cir. 1992) (affirming § 7212(a) conviction

where defendant filed false 1096 and 1099 forms claiming substantial payments to individuals

and had filed a false 1040 form claiming a refund that was not due); United States v. Popkin, 943

F.2d 1535, 1540-41 (11th Cir. 1991) (affirming a § 7212(a) conviction based on a

defendant-attorney's conduct in advising and assisting a client to set up a corporation to disguise

and report proceeds from drug transactions); United States v. Williams, 644 F.2d 696, 701 (8th

Cir. 1981) (holding that conduct of assisting the preparation and filing of false W-4 forms

constituted endeavor to corruptly impede or obstruct the due administration of the Revenue

Code).

Because the defendants in these cases failed to raise the contention made by Willner here,

these cases can no more establish the validity of the Government's theory than Willner's survey

of cases of direct interference with IRS can show its invalidity.  They do establish, however, that

the Government's theory in this case is hardly novel, and has been utilized, without apparent

objection from the courts, in numerous cases.

Unlike Willner's selective review of § 7212(a) prosecutions, the Sixth Circuit's opinion

in Kassouf directly addresses, and supports, Willner's argument.  The court there appeared to

hold that a prosecution may only be maintained under § 7212(a) when the defendant was aware

of a pending IRS investigation while committing the charged conduct.  The court thus upheld the

dismissal of an indictment charging that the defendant maintained inadequate books and records,

thus impeding the IRS's ability properly to assess his taxes.

Both the authority and reasoning of Kassouf are questionable, however.  In United States

v. Bowman, 173 F.3d 595 (6th Cir. 1999), the Sixth Circuit sharply limited the scope of Kassouf

to its particular facts.  Id. at 600.  In Bowman, a panel of the Sixth Circuit noted that despite its

broad language, Kassouf can be read as holding no more than that the theory justifying the

indictments in the various cases cited above should not be extended to cover a case in which the defendant himself failed to keep adequate tax records, and did not provide false information to the IRS.  Id. at 599.  Thus, the Bowman court upheld a conviction in which the defendant deliberately filed false forms with the IRS.  Id. at 600.

It must be noted that Bowman is distinguishable on its facts from the present case, as well as from Kassouf.  In Bowman, the defendant provided false information to the IRS not in connection with his own tax returns, but in an effort to stimulate an IRS investigation of other taxpayers.  Thus, while Bowman rejects a requirement that a defendant must know of an existing IRS proceeding or investigation to violate § 7212(a), the acts of the defendant there were directly connected to a *potential*  IRS investigation that the defendant specifically intended to provoke. Nevertheless, the question here is not whether the Sixth Circuit would see the present case as closer to Kassouf or to Bowman. What matters here is that the broad theory of Kassouf, which Willner argues requires dismissal of the present indictment, has been rejected in its own circuit, which now appears open to § 7212(a) prosecutions based on the filing of false information with the IRS, at least in some circumstances.  Moreover, no other circuit has adopted the Kassouf reasoning, and several courts, both before Kassouf and after Bowman, have rejected it or sustained indictments similar to the present one.  See, e.g., United States v. Pullman, 187 F3d 816, 823 (8th Cir. 1999) (finding evidence produced at trial sufficient to sustain a conviction under § 7212 for, among other things, helping another person prepare and file a false tax return); United States v. Armstrong, 974 F. Supp. 528, 535-36 & n.14 (E.D. Va. 1997) (rejecting district court opinion in Kassouf and sustaining § 7212(a) indictment based on false tax returns); United States v. Molesworth, 383 F. Supp. 2d 1251, 1253-54 (D. Idaho 2005) (noting Bowman's

7

restriction of Kassouf and sustaining § 7212(a) indictment based on filing false Form 8300's with IRS).

The reasoning of Kassouf may also be questioned.  Kassouf rooted its nexus requirement in the Supreme Court's decision in United States v. Aguilar, 515 U.S. 593 (1995), which found a similar nexus requirement in a superficially similar "omnibus" provision in the obstruction of justice statute, 18 U.S.C. § 1503.  The analogy, however, is misleading.  Section 1503's omnibus provision, which prohibits endeavors "to influence, obstruct, or impede the due administration of justice," follows a long list of specific prohibitions of conduct that interfere with actual judicial proceedings.  515 U.S. at 598.  Moreover, a predecessor version of § 1503 prohibited obstructing "the due administration of justice therein," where the antecedent clearly related to "any court of the United States."  See Pettibone v. United States, 148 U.S. 197, 197 (1893) quoting Rev. Stat., Tit. LXX, ch. 4, § 5399 (2d ed. 1878).  Nothing about the history of revision of the statute, which suggests an intention to make only "[m]inor changes . . .  in phraseology," indicates that the elimination of the last word was intended to affect the meaning.  See 18 U.S.C. § 1503 (Historical and Revision Notes, 2000).

The omnibus provision of § 7212(a), in contrast, prohibits endeavors "to obstruct . . . the due administration *of this title*."  (Emphasis added.)  Thus, the plain language of the statute prohibits any effort to obstruct the administration of *the tax code*, not merely of investigations and proceedings conducted by the tax authorities.  The Second Circuit has already decided that this language is not strictly limited by the single narrow prohibition that it follows, which criminalizes the corrupt or forcible efforts to intimidate or impede revenue officers.  In Kelly, 147 F.3d at 175, the Circuit ruled that the language of the omnibus clause is extremely broad,

and should not be limited either to the use of force or threats, or to conduct directed at a

particular officer, pointing out that under the plain language of the statute, a defendant

> need not resort to force or the threat of force in order to be
> convicted of obstruction. . . . [A]lthough the first clause pertains
> only to conduct directed against a government official, the second
> or "omnibus" clause is not so limited, and renders criminal "any
> other" action which serves to obstruct or impede the due
> administration of the revenue laws.

Contrary to the Government's contention, Kelly does not directly control the present

case.  In Kelly, although the underlying tax evasion scheme was in some ways similar to that

here, involving a sham "assignment" of individual income to a corporation, the defendant

provided false information to an IRS agent engaged in auditing his return; he did not merely

provide false information to the IRS on tax returns, or create false documents to support such

returns.  The prosecution would thus be valid even under the Kassouf doctrine, since Kelly

endeavored not simply to avoid taxes, but to obstruct an on-going IRS investigation into an

already completed tax evasion scheme.  Nevertheless, the Circuit's broad interpretation of §

7212(a) is inconsistent with the analogy to Aguilar on which Kassouf relies.

Although both sides purport to rely on the plain language of § 7212(a), that language

plainly does not provide a clear answer.  Were the Court writing on a clean slate, something

could be said for an interpretation that read the "administration" of the Internal Revenue Code as

referring to specific IRS functions or proceedings.  At the same time, however, the language

could at least as well be read as referring broadly to the administrative functions of the IRS in

assessing and collecting taxes, a function which can be severely obstructed and impeded by

schemes to conceal income by the creation and submission of false documents.  The slate is not,

however, entirely clean.  This Circuit's case law provides a body of law that is more closely tied

to the administration of the tax code, and thus more closely analogous to the meaning of §
7212(a), than the general obstruction of justice statute.

It has long been the law of this Circuit that a "conspiracy to frustrate or obstruct the
IRS's function of ascertaining and collecting income taxes" constitutes a conspiracy to defraud
the United States. United States v. Rosengarten, 857 F.2d 76, 79 (2d Cir. 1988), citing United
States v. Klein, 247 F.2d 908, 915-18 (2d Cir. 1957). In Klein, the Second Circuit held that
while the "[m]ere failure to disclose income would not be sufficient to show the crime charged
of defrauding the United States," more active "concealment of income" by making false entries
in books and records, submitting false documents to the IRS, and taking other affirmative acts to
"imped[e] and obstruct[ ] the Treasury Department in the collection of income taxes" satisfied a
general charge of conspiracy to defraud. 247 F.2d at 915-16.

Such "Klein conspiracies" are routinely prosecuted, and have become a staple of federal
law enforcement. To take just one recent example from this Circuit, in United States v. Bellomo,
176 F.3d 580, 591-92 (2d Cir. 1999), the Court of Appeals affirmed a conviction on this theory,
finding that a defendant's acts of "causing [an entity] to file false Tax Exempt Organization
Returns" with the IRS were "acts of concealment [that met] the standard set by Klein," and that
the omission of income from the defendant's own returns established his participation in a
"conspiracy . . . to conceal this stream of cash from the IRS." Under Klein and its progeny, a
conspiracy to "imped[e] the functions of the Internal Revenue Service," id. at 591, constitutes a
conspiracy to defraud the United States under the theory of obstructing government functions
adopted in Hammerschmidt v. United States, 265 U.S. 182, 188 (1924) ("To conspire to defraud
the United States means primarily to cheat the government out of property or money, but it also

means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.").

Just as an agreement by two or more persons to conceal income in this way constitutes a conspiracy to obstruct the administration of the tax code by the IRS, so an effort by a single individual (as here), not joined by any other individual with criminal intent, to conceal income in the same manner constitutes an "endeavor[ ] to obstruct or impede the due administration of [the Internal Revenue Code]."  The indictment here charges Willner not merely with filing a false tax return or failing to declare income, but with scheming to create a false paper trail of checks and divert income to a corporation in order to avoid taxes properly owing on income he himself earned as an individual (or similarly owed by other taxpayers).  If another taxpayer had accepted Willner's invitation to join him in such an endeavor, both would clearly be guilty of a <u>Klein</u> conspiracy.  There is no reason why an individual effort of the same kind should not be treated as a violation of § 7212(a).  Such treatment is fully consistent with the language of § 7212(a), and sensibly fits within the structure of the criminal provisions supporting the tax code.

Accordingly, Count One of the indictment charges a crime against the United States, and will not be dismissed.

B.  <u>Duplicity</u>

An indictment is duplicitous if it "joins two or more distinct crimes in a single count." <u>United States v. Aracri</u>, 968 F.2d 1512, 1518 (2d Cir. 1992), citing <u>United States v. Murray</u>, 618 F.2d 892, 896 (2d Cir. 1980).  Willner argues that Count One, if it charges a crime at all, charges two distinct offenses, a scheme to sell the use of NIA's NOL to other taxpayers, and a separate scheme to utilize the NOL himself.  The indictment, however, alleges a single scheme "in

various ways to make fraudulent use of the NOL purportedly generated by NIA during the 2002 tax year."  (Indt. ¶ 7.)  The allegation in a single count of the commission of a crime by several means is not duplicitous.  <u>Aracri</u>, 968 F.2d at 1518, citing <u>Murray</u>, 618 F.2d at 896.  Moreover, "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as a part of a single continuing scheme."  <u>United States v. Olmeda</u>,  461 F.3d 271, 281 (2d Cir. 2006), citing <u>United States v. Tutino</u>, 883 F.2d 1125, 1141 (2d Cir. 1989), <u>United States v. Aracri</u>, 968 F.2d 1512, 1518 (2d Cir. 1992), and <u>United States v. Margiotta</u>, 646 F.2d 729, 733 (2d Cir. 1981) (approving inclusion of multiple fraudulent mailings in single mail fraud charge).

The distinction between two separate schemes and a single scheme with two branches may well be a matter of degree.  Here, however, the indictment expressly charges a single, continuous, "endeavor" to make fraudulent use of the NOL.  The charged actions have sufficient connection to make this allegation plausible.  Willner's alleged efforts all relate to the same NOL, and seek to utilize it by the same means – the fraudulent transfer of another taxpayer's income to NIA to be set off against the NOL.  Whether Willner himself, or someone else who paid him for the privilege, was that other taxpayer, Willner himself is charged with attempting to profit by the same fraudulent scheme of misusing the NOL.  It is of course for the jury to decide whether Willner committed any of these actions, or did so with the requisite fraudulent intention.  But if it so finds, Willner may appropriately be convicted of one crime, not two.  Accordingly, Count One will not be dismissed as duplicitous.

II.  Counts Two through Five

Counts Two through Five charge Willner with aiding or procuring the filing of fraudulent corporate tax returns by NIA for the 2002 through 2005 tax years, by falsely reporting income as NIA's that was actually his, and that should have been reported on his individual tax return. Willner's sole argument, made without citation of authority, is that the income was properly reported as part of NIA's "gross receipts and sales" because the schools' checks, at Willner's direction, were made payable to NIA and deposited in its accounts, and therefore were "receipts" of NIA.  (D. Br. 14.)  A taxpayer may not so easily evade taxes.  See e.g., In re United Air Lines, Inc., 438 F.3d 720, 733 (7th Cir. 2006) ("constructive receipt doctrine" provides that "cash and receipts in kind are reportable as income . . . when they are constructively received.  Income is constructively received when, although a taxpayer has the power to receive income, she chooses not to do so – generally to obtain favorable tax treatment."), citing Corliss v. Bowers, 281 U.S. 376, 376-77 (1930); Hornung v. Comm'r of Internal Revenue, 47 T.C. 428, 433-34 (1967);  26 C.F.R. § 1.446-1(a)(2) ("[T]axpayer shall adopt such forms and systems as are, in his judgment, best suited to his needs.  However, no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income.")  Income earned by an individual may not simply be redirected to another taxpayer, who can then safely report it as his or its own.  NIA's return misstated its income if it reported as its "receipts" money that was properly income to Willner, not to NIA.  It matters not that NIA overreported rather than underreported its income. Willner is not charged with evading taxes on behalf of NIA, but with aiding it to file a false return.

Precedent supports this conclusion.  In United States v. Plitman, 194 F.3d 59 (2d Cir. 1999), the Second Circuit affirmed a conviction for tax evasion where a defendant instructed an employer to direct income to another corporation rather than to him, and thus avoided paying individual income tax on the money.  The Court noted that "[t]he government presented evidence that [the employer's] payments to [the corporate entity] were in the control or for the direct benefit of Plitman and were not income that [the corporation] earned."  Id. at 65-66.  Whether the income reported on NIA's return was compensation to (and thus income of) Willner or NIA is thus a question of fact.  26 U.S.C. §61(a)(1) (Gross income is defined to include "[c]ompensation for services, including fees, commissions, fringe benefits, and similar items"); Welp v. United States,  201 F.2d 128, 133 (8th Cir. 1953) ("[D]etermination of what shall be considered income for a given year is a question of fact to be determined by the facts under applicable principles of law."); Eggleton v. United States, 227 F.2d 493, 496 (6th Cir. 1955) (whether individual misstated income was a question of fact for the jury); see also Eisner v. Macomber, 252 U.S. 189, 206 (1920) (what is and is not income for purposes of the Sixteenth Amendment must be determined "according to truth and substance, without regard to form."); Ford Motor Co. v. Comm'r of Internal Revenue,  71 F.3d 209, 216 (6th Cir. 1995) ("The issue of whether the taxpayer's method of accounting clearly reflects income is a question of fact to be determined on a case-by-case basis.") (internal citations omitted).

Of course, the Court makes no ruling on whether Willner is in fact guilty of this charge. It will be for the jury to decide whether the income reported was actually Willner's or NIA's, and, if it was properly treated as Willner's, whether Willner intentionally filed a false return or believed in good faith that the income was properly reported as NIA's.  The only issue before the

14

Court is whether the direction of the check to NIA, as alleged in the indictment, establishes as a matter of law that NIA's tax return was not false.  It does not.

III.  Surplusage

Willner moves to strike from the indictment allegations referring to Willner's employment by the IRS and to the underlying basis for NIA's carried-forward net operating loss. The motion is without merit.  A motion to strike surplusage should be granted "only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial."  United States v. Hernandez, 85 F.3d 1023, 1030 (2d Cir. 1996) (citations and internal quotation marks omitted).  "[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken."  United States v. Scarpa, 913 F.2d 993, 1012-13 (2d Cir. 1990) (citation and internal quotations omitted). Willner's background and experience as an IRS agent is relevant to his knowledge and intent, as it tends to support his knowledge of the tax laws and of the proper treatment of income.  See, e.g., United States v. Klausner, 80 F.3d 55, 63 (2d Cir. 1996) (holding that defendant's "background as a CPA and his extensive business experience – including . . .  as a professional tax preparer" was relevant to whether defendant "was aware of his duty to report his income taxes"); United States v. Fletcher, 928 F.2d 495, 501-02 (2d Cir. 1991) (defendant's educational background and experience relevant to issue of intent in tax case).  Similarly, the NOL is the basis of the scheme charged in Count One; the story of its creation is valuable background to the jury's understanding of the nature of the scheme.

Nor do these allegations risk any significant prejudicial effect.  Willner's contention that the jury may be offended by tax evasion committed by an IRS agent is circular: the alleged

inflammatory effect can only occur if the jury believes that Willner engaged in fraudulent tax practices.  As for the source of the NOL, Willner points to nothing potentially inflammatory about the loan that resulted in the NOL; the Government apparently does not contend that the NOL was itself fraudulent.  Accordingly, the probative value of this evidence outweighs any minimal prejudice it may entail.  Thus, both of these allegations refer to facts that will be admissible in evidence, and they may not be stricken as surplusage.

## CONCLUSION

For the reasons set forth above, defendant's motion is denied in all respects.

SO ORDERED.

Dated: New York, New York
       October 11, 2007

                                         _____
                                         GERARD E. LYNCH
                                         United States District Judge